UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| In re<br><br>THE RHODES COMPANIES, LLC aka "Rhodes Homes," et al.,<br><br>    Reorganized Debtors. | Case No. 2:12-cv-00139-MMD-VCF<br><br>ORDER |
| JAMES M. RHODES,<br><br>    Appellant,<br>  v.<br>THE RHODES COMPAINES, LLC aka "Rhodes Homes," et al., Reorganized Debtors,<br><br>    Appellee. | |

**I.     SUMMARY**

Before the Court is James M. Rhodes' ("Appellant" or "Rhodes") appeal from the United States Bankruptcy Court for the District of Nevada's January 25, 2012, Order Sustaining Reorganized Debtors' Objection to James Rhodes' Entitlement to the Tax Claim Found in Proof of Claim No. 814-33 ("Order Sustaining Objection").  (*See* dkt. no. 6.)  Based on the reasoning set forth below, the Bankruptcy Court's Order Sustaining Objection is affirmed.

## II. BACKGROUND

### A. Factual History

This case concerns the bankruptcy petition of a group of construction and holding companies, some of which voluntarily commenced this bankruptcy case under chapter 11 of the Bankruptcy Code. On March 31, 2009, each of the debtors (collectively "Debtors") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Chapter 11 Voluntary Petition, *In re The Rhodes Companies, LLC*, No. 09-14814-LBR (Bankr. D. Nev. Mar. 31, 2009), ECF no. 1. On July 17, 2009, Rhodes filed a Proof of Claim seeking $10,598,000 for (1) reimbursement for taxes paid by Rhodes on account of taxable income allocated to him from some of the Debtors in the amount of $9,729,151 (the "Tax Claim") and (2) $868,849 advanced to Greenway Partners, LLC (the "Greenway Claim"). (*See* dkt. no. 7 ("Appendix") at 9-30.)

The Tax Claim seeks reimbursement for the taxes Rhodes paid on behalf of Heritage Land Company, LLC, The Rhodes Companies, LLC, and Rhodes Ranch General Partnership (collectively, "the Debtor Entities"). (Appendix at 323, ¶ 1.) The taxable income from the Debtor Entities was passed through to Rhodes through the following Non-Debtors: Sedora Holdings, LLC, Rhodes Ranch, LLC, and Sagebrush Enterprises, Inc. (collectively "the Rhodes Entities" or "Non-Debtor Entities"). (Appendix at 324, ¶ 2.) Rhodes owned and controlled the Non-Debtor Entities, and the Non-Debtor Entities owned and controlled the Debtor Entities; all of them were pass-through entities for federal tax purposes, with their taxable income all allocated to Rhodes.[1] (Appendix at 158, ¶ 14.) The total amount of taxable income that flowed to Rhodes was $21,014,159. (*See* Appendix at 12.) Of this amount, $6,974,159 of taxes and $2,754,992 in penalties and interest were paid by Rhodes, the sum of which makes up the $9,729,151 that comprises the Tax Claim. (*See* Appendix at 12.) The books and records of The Rhodes

---

[1] A "pass-through" entity's tax obligation flows through the entities to its members or shareholders. In this case, the Debtor Entities' tax obligations flowed through to Rhodes.

2

1 Companies, LLC contain a ledger entry dated March 31, 2009, in the amount of
2 $9,729,151 due to Rhodes. (Appendix at 323, ¶ 3.) This ledger entry forms the basis for
3 the Tax Claim.
4 According to Rhodes, the Debtor Entities made distributions to the Non-Debtor
5 Entities since 2005 and prior to the date of the bankruptcy petition to cover their tax
6 liabilities. He represents by his declaration testimony that he declared a dividend from
7 the Debtor Entities to himself as reimbursement for the tax payments. (*See* Appendix at
8 155, ¶ 7.)

### B. Procedural History

10 Rhodes argued during bankruptcy, and now on appeal, that a course of conduct
11 existed prior to the petition's filing that requires the Debtor Entities to reimburse him as a
12 creditor. The Bankruptcy Court issued the Order Sustaining Objection on November 16,
13 2010, disallowing and expunging the Tax Claim (*see* Appendix at 530-33), for the
14 reasons set out on the record at a hearing held on November 4, 2010 (*see* Appendix at
15 498-529). Bankruptcy Judge Linda B. Riegle ruled that Rhodes was under an obligation
16 to pay the tax liabilities of the Debtor Entities, and the operating documents of the Debtor
17 Entities do not mandate that they reimburse Rhodes for these obligations. (Appendix at
18 522.) As a result, Rhodes' Tax Claim is valid only if he demonstrates that a decision was
19 made by the Debtor Entities to reimburse Rhodes for the tax payments. (Appendix at
20 522.) Judge Riegle held that such a showing was not made, and, in the alternative, held
21 that Rhodes' argument about a course of conduct does not apply here due to changed
22 circumstances brought upon by "hard times." (Appendix at 522.)
23 After denying a motion to reconsider the November 16, 2010, Order (*see*
24 Appendix at 878-81), the Bankruptcy Court approved the parties' stipulation that
25 provided Rhodes the right to appeal the dismissal of his Tax Claim (*see* Appendix at 905
26 and 943-45). On January 25, 2012, Rhodes filed his notice of appeal of the Order
27 Sustaining Objection. *See* Notice of Appeal, *In re The Rhodes Companies, LLC*, No. 09-
28 ///

3

14814-LBR, ECF no. 1637.  The question on appeal is whether the Bankruptcy Court correctly sustained Reorganized Debtors' objection to Rhodes' Tax Claim.

### III.    STANDARD OF REVIEW

The Bankruptcy Court's conclusions of law are reviewed de novo, and its factual findings are reviewed for clear error.  *See Blausey v. U.S. Tr.*, 552 F.3d 1124, 1132 (9th Cir. 2009).  The Ninth Circuit applies the same standard of review to the Bankruptcy Court's rulings as the district court does and affords no deference to the district court's appellate rulings.  *See In re AFI Holding, Inc.*, 525 F.3d 700, 702 (9th Cir. 2008).

### IV.    DISCUSSION

This appeal concerns two primary issues: whether the Debtor Entities declared a valid distribution to Rhodes prior to their insolvency, and whether the course of conduct between the Debtor Entities and Rhodes established the existence of an implied contract to warrant equitably sustaining Rhodes' Tax Claim.

#### A.    Valid Distribution

Rhodes first argues that the Bankruptcy Court erred when it determined that the declaration of the distribution to Rhodes did not create an enforceable obligation on the Debtor Entities.  Rhodes represents that he declared a dividend from each of the Debtor Entities to Sagebrush Enterprises ("Sagebrush") for reimbursement of the taxes he paid, but does not give an indication as to when that declaration occurred.  (*See* Appendix at 155, ¶ 7.)  Sagebrush is the lone member of The Rhodes Companies, LLC and owned exclusively by Rhodes as his "primary operating entity." (Appendix at 157, ¶ 12.) Rhodes states that the Debtor Entites' declaration was to Sagebrush, not himself individually.  The records of the Rhodes Companies, LLC show a ledger entry dated March 31, 2009, the date of the Debtor Entities' bankruptcy filing, in the amount of the Tax Claim due to Rhodes.  (*See* Appendix at 324, ¶ 3).  Rhodes suggests the timing of the dividend's ledger entry is irrelevant, since the obligation to make the distribution to Rhodes existed as soon as it was declared, not at the time it appeared on the books.
///

In order to unpack this argument, the Court first notes that whether the distribution occurred is a question of fact entitled to deference under a clearly erroneous standard, but whether the evidence in the record is sufficient to establish a decision to declare a dividend is a legal question. The parties dispute both. Rhodes argues that a dividend declaration is sufficient without any kind of formal process, and can be enforced based upon past practice. He also argues that the Bankruptcy Court improperly disregarded his sworn statement that a dividend was declared prior to the bankruptcy filing, which he contends provide sufficient factual basis to conclude a declaration actually occurred. On the other hand, Reorganized Debtors argue that a dividend declaration requires more than an unwritten, unspoken statement of intent in order to be enforceable as a matter of law. They also attack the unreliability of Rhodes' sworn statement, arguing that it is insufficient proof to conclude that a dividend was actually declared.

### 1. Legal Requirement for an Enforceable Declaration

The Bankruptcy Court based her rejection of Rhodes' Tax Claim in part on the lack of evidence to demonstrate a decision was made regarding a declaration, noting that a dividend declaration requires some formalities or process in order to be enforceable. (*See* Appendix at 513 and 522.) This conclusion was correct. The parties do not doubt that a valid declaration of a dividend vests at the time of the declaration, thereby instantly entitling the dividend recipient to the claimed amount. *See, e.g.*, *United States v. Sw. Portland Cement Co.*, 97 F.2d 413, 415 (9th Cir. 1938) ("The general rule is that a complete and valid declaration of a dividend operates to create a debtor-creditor relationship between a corporation and its stockholders and that once a dividend is fully declared and public announcement has been made of that fact, a board of directors is powerless to rescind or revoke its action, the reason being that a 'debtor' cannot rescind

///
///
///
///

its debt"). [2]  "A declaration of dividend which does not create a definite, irrevocable and enforceable debt against the corporation in favor of the stockholders is not a fully declared dividend." *United States v. Baldy*, 108 F.2d 591 (9th Cir. 1939); *Sw. Portland Cement Co.*, 97 F.2d at 415 (holding that a declaration qualified by the phrase "until otherwise ordered by the Board of Directors" was not an irrevocable declaration of a dividend). A certain level of specificity in form is thus required: a declaration must express a definite and final intent to pay a dividend; the dividend must be specific; and its payment must be scheduled on a fixed date. *See* 11 WILLIAM M. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5323 (2012) ("Courts have held that an irrevocable declaration has not been created by the directors when it does not express a definite and final intent to pay a specified dividend on a fixed date."). Rhodes' statement does not demonstrate that these formalities were met, as it does not indicate when the declaration was made or when the dividend was to be paid. Indeed, Rhodes only states that he declared a dividend from each Debtor Entity to Sagebrush Enterprises, Inc. (a Non-Debtor Entity), and not a dividend to himself.[3] Even assuming as true his statement concerning the dividend declaration, the Court cannot conclude that the declaration made was procedurally sufficient to be enforceable during bankruptcy.

These procedural requirements are not to be confused with what corporate law commonly refers to as the formalities of a corporate form, as in meeting minutes or a formal vote of a board of directors. In that sense, Rhodes is correct in his citation to the general principle that a division of corporate profits without the formalities of a

---

[2] Although this case involves the dealings of limited liability companies and one general partnership, the Court cites to established principles of corporate law in its reasoning. At various locations in their briefs, the parties both advance and disown the use of corporate law. Nevada's law governing limited liability companies and general partnerships do not appear to speak to the issues before the Court, and the Court's ultimate holding affirming the Bankruptcy Court's order does not depend on this choice of law.

[3] In his Opening Brief, Rhodes cites his sworn statement and states that he declared a dividend from the Debtor Entities to himself. (*See* dkt. no. 6 ("Opening Br.") at 11, ¶ 17.) However, the section of his sworn statement that the Brief relies upon only states that the dividend was declared to Sagebrush. (Appendix at 155, ¶ 7.)

declaration is proper, particularly for closed corporations. But formalities in this context refer to meetings, stockholder reports, votes, and minutes, such that "a distribution to shareholders may amount to a legal dividend without the formal vote and resolution of directors." *See* 11 WILLIAM M. FLETCHER, supra, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5350. However, a declaration must nevertheless comport with the procedural requirements recognized in *Baldy* and *Sw. Portland Cement* to be considered irrevocable and enforceable. Accordingly, the Bankruptcy Court correctly ruled that the facts attested to by Rhodes do not support a legal determination that an enforceable dividend was declared.

### 2.     Evidentiary Basis for Finding a Valid Declaration

Even if merely declaring an open-ended dividend was sufficient to create a valid and irrevocable dividend, it was not error for the Bankruptcy Court to find that Rhodes did not prove the existence of a valid declaration. The lack of evidence beyond his sworn statement coupled with the ledger entry recorded at the time of the petition filing are the only data points offered by Rhodes to prove the existence of a dividend declaration.[4] This evidence is not enough to meet his ultimate burden of proof. Rhodes does not provide the Court with any assurance that the dividend declaration actually occurred, as no contextual evidence exists to corroborate Rhodes' statement. Further,

---

[4] The parties dispute the proper allocation of the burden of proof on the issue. A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). *See also* Fed. R. Bankr. P. 3007. "The filing of an objection to a proof of claim 'creates a dispute which is a contested matter' within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief." *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (*quoting* Fed. R. Bankr. P. 9014 advisory committee notes). "An objector must come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.'" *Lundell*, 223 F.3d at 1039 (quoting *Wright v. Holm*, 931 F.2d 620, 623 (9th Cir. 1991)). If the objector raises evidence which, if believed, would refute at least one of the allegations essential to a claim, the burden shifts to the claimant to prove by a preponderance of the evidence the validity of the claim. *Id.* (noting that the ultimate proof of persuasion is "at all times" upon the claimant). Here, the burden of proof is upon Rhodes to establish the validity of his Tax Claim, as Reorganized Debtors properly rebutted the presumption of validity by attacking the sufficiency of the evidence in support of Rhodes' Tax Claim.

the ledger entry raises serious questions as to the purported declaration's validity. Without supporting documentation or facts, the Court is left to conclude that the ledger note was recorded as an attempt to circumvent reorganization and withhold funds from future creditors. Accordingly, the Bankruptcy Court's factual and legal rulings as to the validity of the dividend declaration are affirmed.

### B.   Period of Solvency

Even assuming the validity of the declaration and distribution, the Bankruptcy Court's factual determination that the Debtor Entities were likely insolvent at the time of the purported distribution itself invalidates Rhodes' Tax Claim.

It is well established that a company may not authorize a distribution at a time in which the company is insolvent. *See, e.g.*, NRS § 86.343 (governing limited liability companies). The Bankruptcy Court determined that the timing of the ledger entry, and the lack of evidence demonstrating an earlier declaration of a dividend, suggest that any purported declaration was issued while the Debtor Entities were insolvent. The Bankruptcy Court noted that the Debtor Entities might have been insolvent at the time the dividend was declared. (*See* Appendix at 861-62.) In his affidavit filed on the petition date in the related case *In re Heritage Land Company, LLC*, et al. No. 09-04778 (B. D. Nev. filed April 1, 2009), ECF No. 34 at ¶ 26, Rhodes informed the Bankruptcy Court that the Debtor Entities were unable to pay their obligations as early as March 31, 2008, a year before the ledger entry was entered. Having failed to demonstrate when the Debtor Entities declared the dividend, significant doubt exists as to whether the Debtor Entities were solvent at the time in which they declared the dividend to Rhodes.[5] As a result, the

---

[5]The Court again notes that the burden of proof rests solely on Rhodes, not, as he argues, on Reorganized Debtors. Rhodes makes much of the fact that Reorganized Debtors have failed to prove when the declaration occurred, arguing that their inability to cut through Rhodes' opaque testimony somehow renders their objection invalid. But as discussed above, Rhodes carries the ultimate burden of persuasion: he cannot create confusion surrounding a questionable dividend declaration that he fails to provide support for, then subsequently point fingers at Reorganized Debtors for revealing this lack of clarity.

8

1  Bankruptcy Court rested its decision upholding Reorganized Debtors' objection at least
2  in part on the question of insolvency.  This ruling was not in error.

### C. Course of Conduct and Implied Contract

Rhodes also argues that the Bankruptcy Code erred when it determined that the course of conduct between Rhodes and the Debtor Entities did not establish the existence of a contract.  He argues that the course of conduct between Rhodes and the Debtor Entities evidences an implied contract between the parties to reimburse Rhodes for his tax payments.

Reorganized Debtors lodge a procedural objection to this argument, which the Court dismisses at the outset.  Reorganized Debtors assert that Rhodes' implied contract argument is waived, since he failed to raise the issue during the bankruptcy proceedings.  But this was only a defect in form, not in function.  Rhodes consistently argued that the course of conduct between himself and the Debtor Entities validates his Tax Claim.  Although he did not appear to utter the words "implied contract" as such, the Court is satisfied that his course of conduct argument sufficiently preserved this issue for appeal, since it is well established that prior course of conduct can demonstrate mutual assent to promises and consideration sufficient to establish an implied contract.  *See Smith v. Recrion Corp.*, 541 P.2d 663, 664 (Nev. 1975) ("The terms of an express contract are stated in words while those of an implied contract are manifested by conduct."); *Warrington v. Empey*, 590 P.2d 1162, 1163 (Nev. 1979) ("In an implied contract, [manifestation of intent to contract] is inferred from the conduct of the parties and other relevant facts and circumstances.").

Turning to its merits, the position that Rhodes and the Debtor Entities entered into an implied contract is without merit.  First, no consideration existed for the Debtor Entities' promise to repay Rhodes for the tax payments, since Rhodes was under a legal obligation to pay for the tax liabilities of his pass-through entities.  *See Cnty. of Clark v. Bonanza No. 1*, 615 P.2d 939, 944 (Nev. 1980) ("Consideration is not adequate when it is a mere promise to perform that which the promisor is already bound to do.").  The

9

1  Bankruptcy Court correctly ruled that Rhodes was obligated by law to pay taxes, and
2  therefore could not use that obligation as consideration, even in return for maintaining
3  his position as director and CEO of the Debtor Entities as he argues in his Reply. (*See*
4  dkt. no. 10 at 10:4-5.)  Second, no evidence exists demonstrating a manifestation of
5  intent to enter into a contract.  Nothing beyond Rhodes' sworn statement supports such
6  a finding; no documents supporting prior distributions were produced, nor do any
7  expressions of intent exist.  Lastly, even assuming such an intent existed, circumstances
8  changed between when the alleged pattern of conduct occurred and the instant dividend
9  declaration so as to invalidate any mutual assent between the parties.  As the
10 Bankruptcy Court correctly pointed out, an impending insolvency is a sufficient change of
11 circumstances to vitiate whatever implied contract existed between the parties, since the
12 assumptions material to any agreement would have changed in the intervening time.
13 *See Warrington v. Empey*, 95 590 P.2d 1162, 1163 (1979) ("In an implied contract, [an
14 intent to contract] is inferred from the conduct of the parties and other relevant facts and
15 circumstances.").  The facts of looming insolvency and difficult economic times constitute
16 just the sort of relevant circumstances that disfavor an inference of mutual assent based
17 on past conduct. The Court therefore affirms the Bankruptcy Court's decision to
18 disregard Rhodes' course of conduct argument.

19 **V.     CONCLUSION**

20       After reviewing the record and the parties' briefs, the Court concludes that
21 Rhodes has failed to demonstrate that the Bankruptcy Court's findings of fact were
22 clearly erroneous or that its legal conclusions were in error.  Accordingly, IT IS HEREBY
23 ORDERED that the decision of the Bankruptcy Court is AFFIRMED.

       DATED THIS 29th day of May 2013.

                                            _____
                                            MIRANDA M. DU
                                            UNITED STATES DISTRICT JUDGE